IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 19-cr-00381-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JUAN VASQUEZ-VASQUEZ,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on Defendant's Motion to Dismiss the Indictment [Docket No. 33]. On August 21, 2019, defendant Juan Vasquez-Vasquez was indicted on one count of illegal reentry in violation of 8 U.S.C. § 1326(a). Docket No. 1 at 1.

Section 1326(a) of Title 8 of the United States Code provides that any person who "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter . . . enters, attempts to enter, or is at any time found in, the United States . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both." 8 U.S.C. § 1326(a). On December 6, 2019, defendant moved to dismiss the indictment on the basis that the underlying deportation order on which his criminal charge is based is invalid. Docket No. 33 at 5, 9.

**I. BACKGROUND**

On June 29, 2011, defendant was taken into custody by Customs and Border

Protection ("CBP") after a traffic stop in Stanfield, Arizona. Docket No. 36 at 1; Docket No. 36-1. The field processing form, completed on the day of arrest, indicates that defendant entered the United States on June 21, 2011 at 6:00 a.m. Docket No. 36-1.

On July 1, 2011, a border patrol agent interviewed defendant under oath. Docket No. 36 at 1; Docket No. 33 at 1. Before the interview, defendant was informed, in Spanish, that "[t]his may be [his] only opportunity to present information to . . . the Department of Homeland Security [("DHS")] to make a [removal] decision" and that it was "very important that [defendant] tell [the agent] the truth." Docket No. 33-1 at 5. The agent told defendant that he was not entitled to a hearing or review of the deportation proceedings. *Id.* He also informed the defendant that, if he had any fear or concern about being removed from the United States or about being returned to Mexico, he should inform the agent during the interview because he "may not have another chance." *Id.* After the advisement, the agent asked defendant if he understood what was told to him. *Id.* The defendant said yes. *Id.* He was then asked if he had any questions. *Id.* The defendant said no. *Id.* The defendant indicated that all of his answers would be true. *Id.* The defendant initialed each page of the interview form. *Id.* at 5-6.

During this interview, defendant indicated that he was a citizen of Mexico and had no legal status in the United States. *Id.* at 6. He reiterated that he entered the United States on June 21, 2011 at 6:00 a.m. *Id.* He also explained that he "crossed the [d]esert in a place where there was no fence." *Id.* He stated that he did not have any fear or concern about being removed from the United States or returning to Mexico

2

and would not be harmed if he were to return to Mexico.  *Id.* at 7.

After the interview, defendant was served with an order of expedited removal pursuant to 8 U.S.C. § 1225(b)(1), which provides that an individual who has not been admitted or paroled into the United States, and who has not shown that he or she has been physically present in the United States for the two-year period immediately prior to the date of the determination of inadmissibility, is subject to removal from the United States without further hearing or review unless the individual indicates that he or she intends to seek asylum or has a fear of persecution.  Docket No. 33 at 2; 8 U.S.C. § 1225(b)(1)(A).  At the time that defendant was detained, the DHS was authorized to conduct expedited removal proceedings in cases when a non-citizen was encountered within 100 air miles of the United States border and when the non-citizen could not establish that he or she had been continuously physically present in the United States for the fourteen-day period immediately prior to the date of the encounter.  *See* Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877-01 (August 11, 2004).

Defendant was removed from the United States on July 3, 2011.  Docket No. 33 at 2.  Defendant entered the United States and was removed to Mexico on five subsequent dates: November 30, 2012; April 2, 2013; June 14, 2013; July 1, 2013; and April 23, 2014.  *Id.*  Each time he was removed, he was served with a Notice of Intent/Decision to Reinstate Prior Order of Removal that reinstated the July 1, 2011 order of removal.  *Id.* at 2-3.

## II.  ANALYSIS

Defendant argues that the indictment must be dismissed because the order of

removal on which the government bases its illegal reentry prosecution is invalid. Docket No. 33 at 5, 9. Specifically, defendant contends that he should not have been subject to expedited removal because he had been continuously present in the United States for longer than the fourteen-day period immediately preceding his encounter with CBP officials. *Id.* at 9-10. He claims that "the inability to seek appellate or judicial review of the removal, at the time, left [him] without recourse to correct the documented statement regarding his date of entry." *Id.* at 10. The government responds that defendant may not collaterally attack the deportation order, Docket No. 36 at 2, and, even if defendant could do so, his motion fails on the merits. *Id.* at 6.

### A. Collateral Attack

The government contends that defendant may not collaterally attack the underlying deportation order under 8 U.S.C. §§ 1252 and 1225(b)(1)(D). *Id.* at 2. Section 1252 provides that "no court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title." 8 U.S.C. § 1252(a)(2)(A)(i). Moreover, section 1225 provides that courts "shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii)." 8 U.S.C. § 1225(b)(1)(D).[1]

The Ninth Circuit has held that the jurisdiction-stripping provision found in 8 U.S.C. § 1225(b)(1)(D) is unconstitutional. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011). In reaching its decision, the court relied upon the

---

[1] Defendant was removed pursuant to subparagraph (A)(i). Docket No. 33-1 at 4.

Supreme Court's decision in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). In *Mendoza-Lopez*, the Supreme Court determined that, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." 481 U.S. at 837-38. When the administrative proceeding is not initially subject to judicial review, "an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Id.* at 838. "Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id.* In the *Barajas-Alvarado* decision, the Ninth Circuit held that, under *Mendoza-Lopez*, a collateral attack must be made available in the context of an underlying expedited removal order. 655 F.3d at 1083.

Defendant urges the Court to adopt the reasoning of the Ninth Circuit in *Barajas-Alvarado* and allow his collateral attack to proceed. Docket No. 33 at 8. While at least one other circuit court has followed *Barajas-Alvarado*, *see United States v. Villarreal Silva*, 931 F.3d 330, 337 (4th Cir. 2019), the Tenth Circuit has not addressed this issue.[2] The Court finds that it need not rule on the constitutionality of 8 U.S.C. § 1225(b)(1)(D) because, even if defendant may collaterally attack his deportation order, he cannot succeed on the merits of his motion.

---

[2]Another district court in this circuit has followed *Barajas-Alvarado*. *See United States v. Barrera-Rojo*, 2018 WL 2172925, at *2 (D.N.M. May 10, 2018).

## B. Challenging a Deportation Order under § 1326

An individual may not challenge a deportation order on which a § 1326 charge is predicated unless the individual demonstrates that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order;" (2) the deportation proceedings "deprived [the individual] of the opportunity for judicial review;" and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). "[A] final deportation order enjoys a presumption of regularity," and the burden is on the defendant to "prove each of § 1326(d)'s elements to overcome the presumed legality of the earlier deportation order." *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010).

The parties do not dispute that the first two requirements of § 1326(d) are satisfied here. *See* Docket No. 33 at 8; Docket No. 36 at 6-10; *see also United States v. Terrazas Silas*, 397 F. Supp. 3d 812, 822 (E.D. Va. 2019) (stating that because "expedited removal provisions expressly deny noncitizens administrative and judicial review . . . [c]ourts considering § 1326(d) challenges of expedited removal orders have held that no more is needed to satisfy the first and second requirements."). Thus, the issue before the Court is whether defendant has established that the entry of the deportation order was fundamentally unfair. "An underlying order is 'fundamentally unfair' if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Vargas-Ortiz*, 667 F. App'x 699, 700 (10th Cir. 2016) (quotation omitted) (unpublished). To establish prejudice, defendant must "demonstrate a

reasonable likelihood that, but for the errors complained of, he would not have been deported." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004).

Defendant argues that the entry of the expedited removal order was fundamentally unfair because, if he had not been subject to expedited removal proceedings, he "could have applied for and received relief from removal, such as voluntary departure, withholding of deportation, asylum, and relief pursuant to the convention against torture." Docket No. 33 at 11. The Court finds that defendant cannot meet his burden of establishing that the entry of the deportation order was fundamentally unfair.

Defendant focuses the majority of his argument on his contention that he "had a reasonable likelihood of obtaining voluntary departure" if he had not been subject to expedited removal. *Id.* at 12. Defendant bears the burden of "demonstrat[ing] that he was eligible for relief in the form of voluntary departure." *Essuman v. Gonzales*, 203 F. App'x 204, 210 (10th Cir. 2006) (unpublished). "[C]onclusory statements going to [a defendant's] eligibility for voluntary departure . . . are insufficient to discharge [the defendant's] prima facie burden." *Id.*

"Voluntary departure is a privilege left to the attorney general's discretion." *Lopez-Gonzalez v. Sessions*, 736 F. App'x 725, 730 (10th Cir. 2018) (unpublished). The Tenth Circuit has noted "the inherent difficulty in demonstrating prejudice from the denial of eligibility for discretionary relief." *United States v. Almanza-Vigil*, 912 F.3d 1310, 1323 (10th Cir. 2019). Even if an individual is statutorily eligible for voluntary departure, it is still within the attorney general's discretion to deny such relief. *Lopez-*

7

*Gonzalez*, 736 F. App'x at 730.

To establish that he or she is eligible for voluntary departure, an individual must show that (1) he or she "has been physically present in the United States for period of at least one year preceding the date the Notice to Appear was served under section 239(a) of the Act;" (2) he or she "is, and has been, a person of good moral character for at least five years immediately preceding the application;" (3) he or she "has not been convicted of a crime described in section 101(a)(43) of the Act and is not deportable under section 237(a)(4);" and (4) he or she "has established by clear and convincing evidence that the alien has the means to depart the United States and has the intention to do so." 8 C.F.R. § 1240.26(c). Defendant has not argued that he meets these criteria for voluntary departure eligibility. *See* Docket No. 33 at 33 at 11-12. Further, the record demonstrates that defendant did not meet these criteria, as the record indicates that defendant entered the United States on June 21, 2011. Docket No. 33-1 at 6. Thus, even if defendant had been given the opportunity to apply for voluntary departure, he would not have been able to establish that he had been physically present in the United States for at least one year preceding his application, a requirement for voluntary departure under 8 C.F.R. § 1240.26(c).

Defendant disputes the accuracy of the record indicating that he entered the country on June 21, 2011, and "denies that he told [the agent] during his interview on July 1, 2011[] that he entered the United States ten days prior on June 21, 2011." Docket No. 33 at 9. He argues that "there is ample evidence" demonstrating that he was in the country prior to that date. *Id.* at 10. For example, defendant contends that his evidence demonstrates that he worked in the United States in October 2010, that "a

8

Juan Vasquez-Vasquez" was associated with a United States address from March 2011 to July 2011, that defendant registered a vehicle in the United States in March 2011, and that a photograph of defendant "dated June 1, 2011" was taken in the United States. *Id.* at 3-4. Defendant also states that, in the spring of 2011, he began dating Ms. Cecilia Herrera, who "specifically remembers that she met [defendant] about a month prior to his May 6th birthday" and that she "knows that [defendant] did not leave Arizona before his deportation and removal on July 3, 2011." *Id.* at 3.[3]

The Court finds that defendant has failed to rebut the presumption of regularity that is assigned to the underlying administrative proceedings so as to call into question the accuracy of the record indicating that defendant entered the United States on June 21, 2011. As an initial matter, defendant does not raise any specific allegations of irregularity. For example, he does not allege that the DHS officials did not speak or understand Spanish, that the DHS officials fabricated his answers, that the DHS officials coerced him into answering questions a certain way, or that the interviews or interactions were otherwise irregular or problematic. *See* Docket No. 33. Instead, defendant simply reasons that there must have been a miscommunication. *Id.* at 9. Such a speculative conclusion is insufficient to overcome the presumption of regularity assigned to administrative proceedings. *See Vladimirov v. Lynch*, 805 F.3d 955, 964 (10th Cir. 2015) (rejecting petitioner's argument that administrative form was not entitled to presumption of reliability where there was "no indication that [the officer's report] was carelessly or maliciously drafted or was intended to serve as anything other than an

---

[3] Defendant does not submit any documentation from Ms. Herrera supporting this allegation.

administrative record") (quotation omitted).

Moreover, the evidence submitted by defendant does not contradict his statements in the record that he entered the United States on June 21, 2011. At best, the evidence demonstrates that defendant may have been physically present in the United States in October 2010 or March 2011. However, such evidence does not rebut defendant's statements that he entered the country on June 21, 2011, and the defendant's evidence is therefore immaterial to the Court's inquiry.

Additionally, defendant's contention that Ms. Herrera "knows that [defendant] did not leave Arizona before his deportation and removal on July 3, 2011" cannot, on its face, rebut defendant's statement. The record reflects that defendant indicated on two separate occasions that he entered the United States on June 21, 2011 – once when he was initially detained on June 29, 2011, and again during his interview on July 1, 2011. *See* Docket No. 36-1 at 2; Docket No. 36-2 at 3. The field processing form from defendant's original detainment, bearing defendant's date of entry, is signed by defendant. Docket No. 36-1 at 2. Moreover, defendant gave multiple assurances during his July 1 interview that he was providing accurate information. He was informed – in Spanish – prior to his interview that "[i]t [was] very important that [defendant] tell [the agent] the truth." Docket No. 36-2 at 2. He was told that, if he lied or provided misinformation, he may be subject to criminal or civil penalties or may be barred from receiving immigration benefits or relief in the future. *Id.* When asked if he understood what the agent had said, defendant answered, "yes." *Id.* Defendant also indicated that he had no questions for the agent and that he was willing to answer the agent's questions. *Id.* Defendant also "[swore] or affirm[ed] that all the statements [he] was

10

about to make [were] true and complete." *Id.*

During the interview, the agent asked defendant, "When did you illegally enter into the United States this time? Tell the time and date if you can." *Id.* at 3. Defendant answered, "I entered on 6/21/11 at around 0600." *Id.* The agent then asked, "Where and how did you illegally enter into the United States this time?" *Id.* Defendant answered, "I crossed the [d]esert in a place where there was no fence." *Id.* The Record of Sworn Statement in Proceedings from the interview was initialed and signed by defendant and bears defendant's fingerprint.[4] In signing the statement, defendant "state[d] that [his] answers [were] true and correct to the best of [his] knowledge and that this statement is a full, true and correct record of [his] interrogation on [July 1, 2011]." *Id.* at 4. Ms. Herrera's unsworn statement, made eight years after defendant's 2011 detainment, cannot rebut the record that is not only entitled to a presumption of irregularity, but which contains multiple sworn statements by defendant, based on his personal knowledge, indicating that he entered the United States on June 21, 2011.

In addition, defendant's self-serving statement "denying" that he provided a June 21, 2011 date of entry is insufficient to overcome the presumption of regularity. *See United States v. Loaisiga*, 104 F.3d 484, 487 (1st Cir. 1997) (finding that "self-serving statements years after the fact are not very compelling"). As set out above, the record contains many assurances that defendant understood the proceedings and was providing accurate information. Defendant cannot now, several years later, contradict

---

[4] Page 2 bears defendant's initials and fingerprint; page 3 bears defendant's initials; and page 4 bears defendant's signature and fingerprint. *See* Docket No. 36-2 at 2-4.

this record in his collateral attack by simply disputing that he made these statements. *See United States v. Cervantes-Martinez*, 2011 WL 4434861, at *3 (S.D. Cal. Sept. 23, 2011) ("Defendant's self-serving declaration that he was not informed of the immigration consequences is insufficient to rebut the evidentiary record."); *cf. United States v. Cano-Gomez*, 2010 WL 11545703, at *7 (N.D. Cal. Apr. 20, 2010) (rejecting defendant's self-serving statement that he was informed that, if he waived his right to a hearing, he would be granted voluntary departure, and stating that "[w]here documentary evidence contradicts the defendant's statement and the statement is implausible on its face, the court may reject it on the papers submitted without a hearing").

Self-serving and unsupported statements are insufficient to overcome the presumption of regularity. In *Hernandez-Silvas v. Attorney Gen. of United States*, 767 F. App'x 322, 326-27 (2019) (unpublished), the Third Circuit found that a non-citizen could not overcome the presumption of regularity assigned to his asylum proceeding with unsupported allegations of irregularity. In that case, the petitioner argued that several procedural errors had been committed during the review of his asylum claim – for example, petitioner alleged that the asylum officer did not let petitioner explain his answers and did not provide a full and accurate summary of the transcripts and further claimed that the translator "was continually cut off." *Id.* at 326. The Third Circuit rejected the petitioner's argument, finding that "[t]here [was] no evidence in the record" supporting the petitioner's bare allegations of irregularity. *Id.* at 327. In addition, the court noted that, when asked if he was afraid to return to his native country or was

being targeted because of his political beliefs, the petitioner had answered in the negative. *Id.* The court found that there was "no basis in the record to conclude" that the underlying proceeding was "marred by irregularities." *Id.* Similarly here, where there are no specific allegations of procedural irregularities, but only an unsupported denial of statement by defendant – one that is contradicted by the record – the Court finds that defendant has failed to overcome the presumption of regularity. Because the underlying proceedings were regular, and because the record indicates that defendant entered the United States on June 21, 2011, he cannot demonstrate that, absent the expedited removal, he "may have received relief from removal, such as voluntary departure." Docket No. 33 at 9.[5]

In addition, defendant argues that he may have received relief from removal in the form of asylum or relief pursuant to the Convention Against Torture.[6] *Id.* However,

---

[5] Moreover, "[i]n exercising their discretion to grant or deny a voluntary-departure application, immigration judges balance the applicant's positive equities, like lengthy residence in the United States and close ties to family here, against negative factors, like an unfavorable immigration history or a criminal record, and then decide whether the applicant is worthy of an exercise of discretion." *Almanza-Vigil*, 912 F.3d at 1326. Defendant has not established that there is a reasonable likelihood that this balance in equities would have weighed in his favor. Defendant notes that, as of July 2011, he "had lived in Arizona since 2010, had a residence in Casa Grande, [Arizona,] was working at the dairy farm, had met his soon-to-be-wife [Ms. Herrera], [and] had no immigration or criminal history." Docket No. 33 at 12. But these factors do not establish a reasonable likelihood that he would have been granted voluntary departure. Living in the United States from October 2010 until July 2011 – a period of nine months – does not constitute a lengthy residence in the country. Defendant argues that he had already "met his soon-to-be-wife." *Id.* However, defendant met Ms. Herrera in approximately April 2011. *Id.* at 3. A relationship of three months cannot be deemed "close ties to family" in the United States when defendant has offered no proof of other familial ties in the area.

[6] "The Convention [A]gainst Torture was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998." *Bhalli v. Ashcroft*, 96 F. App'x

13

the record – which is given the presumption of regularity – demonstrates that defendant consistently indicated that he had no fear of persecution or fear of returning to Mexico. During the July 1 interview, the agent informed the defendant that "U.S. law provides protection to certain persons who face persecution, harm or torture upon return to their home country." Docket No. 36-2 at 2. He was told that, if he had any fear or concern about being removed from the United States or about being returned to Mexico, he should indicate so during the interview, "because [he] may not have another chance." *Id.* The agent also informed defendant that, if defendant indicated that he had this fear, he would have an opportunity to speak privately and confidentially to another officer about his fear or concern. *Id.*

After receiving this information, and after affirming that all of the statements he was about to make were true and complete, defendant indicated that he did not have any fear about returning to Mexico. *Id.* at 2-3. Specifically, defendant was asked whether he "[had] any fear or concern about being returned to your home country or being removed from the United States." *Id.* at 4. Defendant said that he did not. *Id.* When asked, "Would you be harmed if you are returned to your home country or country of last residence?," defendant answered, "No." *Id.* Defendant indicated that he had no questions and that he had nothing else to add. *Id.* This statement was signed and fingerprinted by defendant, in which he affirmed that "[his] answers [were] true and

---

588, 590 (10th Cir. 2004) (unpublished). "It permits withholding of removal for an alien who establishes that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Sviridov v. Ashcroft*, 358 F.3d 722, 724 n.2 (10th Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)). The Court addresses defendant's arguments concerning asylum and the Convention Against Torture together.

correct to the best of [his knowledge]." *Id.*[7] The record, which is entitled to a presumption of regularity, contains no indication that there is a "reasonable likelihood" that defendant would have been granted asylum relief if he had not been subject to the expedited removal proceedings so as to render the expedited removal order fundamentally unfair. If an individual argues that he is eligible for asylum, "but 'nothing in the record . . . even remotely suggests . . . any grounds' for asylum," then that person has failed to show prejudice. *United States v. Ramirez-Cortinas*, 2019 WL 6799652, at *4 (5th Cir. 2019) (quoting *United States v. Encarnacion-Galvez*, 964 F.2d 402, 410 (5th Cir. 1992)).

Finally, defendant argues that he may have been entitled to relief in the form of "withholding of deportation." Docket No. 33 at 9. Defendant does not explain why he could have been granted "withholding of deportation" after he admitted to having no legal status in the United States and having entered the country illegally. *See* Docket No. 36-2 at 3. The Court finds that defendant has failed to show that he was prejudiced by the deportation order on the basis that he was denied the right to seek "withholding of deportation." Defendant has not met his burden of demonstrating that the underlying proceeding was fundamentally unfair.

Defendant has failed to demonstrate that there is a reasonable likelihood that he would have avoided deportation if he had not been subject to the expedited removal process and, for this reason, cannot show that he was prejudiced by the underlying

---

[7] Furthermore, in subsequent removal proceedings in April 2013, June 2013, July 2013, April 2014, and August 2019, defendant indicated in sworn statements that he had no fear or concern about being returned to Mexico or being removed from the United States. Docket No. 36-6 at 6, 9, 12, 14, 18.

removal order so as to render it fundamentally unfair under 8 U.S.C. § 1326(d). As a result, his motion to dismiss the indictment will be denied.

III. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant's Motion to Dismiss the Indictment [Docket No. 33] is **DENIED**.

DATED January 8, 2020.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge